## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**ONITA L. BROWN,**

     **Plaintiff,**

**-vs-**                   **Case No. 6:06-cv-1700-Orl-19DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

_____

### MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for social security disability insurance benefits and supplemental security income. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

#### *PROCEDURAL HISTORY*

In May 2004, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income (R. 12, 66-69, 457-59). The applications were denied initially and on reconsideration (R. 31-33, 36-7, 463-65, 468-470). Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") on March 13, 2006 (R. 659-73). On June 5, 2006, the ALJ issued an unfavorable decision (R. 9-19). The Appeals Council denied Plaintiff's request for review (R. 5-7), making the ALJ's decision the final decision of the Commissioner. The instant Complaint timely followed (Doc. No. 1), and the parties have briefed the issues and waived oral argument. The matter is now ripe for review.

### ***NATURE OF CLAIMED DISABILITY***

Plaintiff alleges that she became totally disabled on November 1, 2003, due to depression, residuals from Hepatitis C, gastroesophageal reflux disease (GERD), and pain in the lower back and legs (R. 13).

*Summary of Evidence*

At the time of the hearing, Plaintiff was forty years of age, with a high school education and past relevant work as a restaurant cook/food prep person and laundry room attendant (R. 96, 662, 92, 101-104, 663). After the alleged onset date, Plaintiff continued to work part time as a laundry worker, but stopped working completely in August 2005 (R. 84, 663).

The medical evidence is summarized in the ALJ's decision. Briefly, Plaintiff had seen Dr. Mario Moquete, a gastroenterologist, for evaluation of her hepatitis, noting her symptoms of weight loss, pain and loss of appetite (R. 152). Plaintiff underwent interferon treatment, which caused significant side effects of depression, total body aches and anorexia (R. 152, 148-49). She was started on medication for her depression, and on June 10, 2004, Plaintiff's physician noted that Plaintiff did not suffer from a mental impairment that significantly interfered with social functioning, but was prescribed an anti-depressant " to help [in] dealing [with] side effects of current treatment for Hepatitis C, a temporary condition and state." (R. 195).

Plaintiff underwent consultative examinations at the request of the agency in November 2004. The examining internist concluded that Plaintiff "appears to be doing well on her treatment" and "she would have no problems being gainfully employed." (R. 220). The examining psychologist concluded that Plaintiff had an adjustment disorder with depressed and anxious mood, assessed a Global Assessment of Functioning score of 69, and concluded that "she will be able to respond appropriately

in work settings that do not put undue stress on her condition and there are no psychological obstacles to employment if her physical condition would so permit." (R. 223-224).

Plaintiff presented to another gastroenterologist on January 20, 2005, noting that she had been treated for three months by Dr. Moquete, but ran out of medications and had not followed up with him (R. 283-4). Dr. Mastali suggested that Plaintiff pursue a referral to a psychiatrist to manage her possible depression. *Id.* Plaintiff restarted her treatment on March 25, 2005, and Dr. Mastali noted that the treatment may last for a year and have "lots of side effects." (R. 249). Indeed, on follow up appointment Plaintiff was noted to have sustained a weight loss, loss of appetite, had difficulty falling asleep, had a fine tremor, pain, and was experiencing blurred vision with dizziness. (R. 281). On May 20, 2005, Plaintiff was placed on light duty for a period of three months. *Id.*

Plaintiff presented to the emergency room at the hospital on June 7, 2005, complaining of anorexia, weight loss, generalized weakness, leg pain and headaches (R. 320, 331). It was felt that Plaintiff could not tolerate her hepatitis treatment and the medications were thus discontinued (R. 313). She was given antibiotics for an active infection, gradually improved over several days and was discharged in stable condition.

Plaintiff returned to Dr. Mastali in July 2005, and impression was anorexia, weight loss, GERD, Chronic Hepatitis C, hypothyroidism, insomnia and back pain (R. 270). On return visit on August 22, 2005, Plaintiff's insomnia and back pain had improved (R. 271).

In October 2005, Plaintiff presented to the emergency room with complaints of chest pain, and was discharged with a diagnosis of GERD and acute pancreatitis (R. 637).

The record reveals that Plaintiff also treated with Dr. Dommeti from March 2004 through July 2005 for anxiety and back and leg aches (R. 251-257, 664). On March 8, 2006, Dr. Dommeti completed a medical questionnaire which indicated that Plaintiff suffered from hepatitis, anemia,

chronic headache and chronic backache (R. 142). Dr. Dommeti indicated that Plaintiff could not walk for more than two blocks, walk continuously for more than fifteen minutes, stand for more than thirty minutes, bend, crawl, climb or perform a full-time job due to her medical condition which had a guarded to poor prognosis. *Id.*

Plaintiff appeared and testified at her hearing regarding her fatigue and pain. She stated that she could sit comfortably for about 20 to 30 minutes and could not walk for even a block (R. 669). She eats every other day, and has trouble keeping food down. *Id.* She has insomnia four to five times a week (R. 670). She attends church once a week (R. 670) and, at the time of the hearing, she stated that she had returned to Dr. Dommeti and he had planned to refer her to a pain specialist and a psychiatrist (R. 667, 672).

The ALJ found that Plaintiff has severe impairments of hepatitis C and GERD (R. 18), but that they did not meet or medically equal, individually or in combination, one of the impairments found in the Listings of Impairments (20 C.F.R. pt. 404, subpt. P, app. 1). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light exertional work and stand, walk and sit six hours in an eight hour day (R. 18). The ALJ determined that Plaintiff could not perform her past relevant work (R. 19), but utilizing Medical-Vocational Guidelines ("the Grids") Rule 202.20, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act.

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff contends that the ALJ erred 1) in failing to utilize the testimony of a Vocational Expert, 2) in formulating her RFC and 3) in evaluating her complaints of pain and limitations, including the evaluation of her credibility. The Court disagrees.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she

is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). The ALJ made this determination at the fifth step of this process.

### When Vocational Expert Is Necessary

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "Grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the Grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the Grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish

whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Applied here, the ALJ made a specific finding that Plaintiff's RFC for light work was "substantially intact and has not been compromised by any non-exertional limitations" and thus, applied the Grids (R. 19). Plaintiff contends that this conclusion is not supported by substantial evidence, as the record is clear that Plaintiff suffered from pain, depression and other limitations arising from her medical conditions.

With respect to Plaintiff's depression, the record contains substantial evidence to support the ALJ's conclusion that it was not a severe impairment. *See* Dr. Moquete's opinion (R. 195) and the opinion of the consultative psychologist (R. 223-24). As for Plaintiff's allegations of disabling pain, substantial evidence supports the ALJ's conclusion on that issue, as well.

**Evaluating Pain**

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, there is no doubt that Plaintiff suffered from an underlying medical condition of hepatitis (step one), but the ALJ concluded that Plaintiff's allegations of *disabling* pain are inconsistent with the medical evidence and her "fully functional" lifestyle (R. 16). This conclusion is supported by substantial evidence.

The results of a consultative examination indicated that Plaintiff was doing well and should not have a problem being gainfully employed (R. 218-21). Even when Plaintiff was quite symptomatic from the side effects of her treatment, her treating physician merely placed her on light duty for three months (R. 249, 281-84). Indeed, Plaintiff was able to work part-time for over a year and a half after her alleged onset date. Moreover, Plaintiff's description of her activities support the "fully functional" comment. She stated that she cooks, cleans, dusts and does the laundry and is active in her church (R. 111, 116-117). While Plaintiff correctly contends that everyday activities of short duration do not disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ did not rely solely on a few everyday activities, but also noted the medical

evidence and Plaintiff's ability to work part time. All told, the pain and credibility determination is amply supported.

Plaintiff points to the opinion of Dr. Dommeti and contends that it was improperly discredited. The Court disagrees. It is true that substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, *supra,* 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, the ALJ noted the conclusory opinion of Dr. Dommeti, and discredited it as Dr. Dommeti had not treated the Plaintiff since July 2005 and the opinion was not supported by objective medical evidence. Both statements have ample record support. No treating records are included from Dr. Dommeti after mid-July 2005, and Plaintiff does not contend that the record is incomplete. Moreover, the ALJ correctly notes that this opinion is inconsistent with the opinions of the examining consultant, the treating physician for Plaintiff's Hepatitis, and the two non-examining state agency consultants, who opined that Plaintiff was capable of light work. As Dr. Dommeti did not provide any medical evidence to support his conclusions, the ALJ did not err in evaluating and discrediting the opinion, in accordance with the regulations.[1]

As the ALJ's determination regarding Plaintiff's allegations of pain and other non-exertional symptoms are supported by substantial evidence, as is the ALJ's finding of RFC for substantially all of the range of light work, it follows that the ALJ properly relied upon the Grids and did not err in failing to obtain vocational testimony.

---

[1] The Court rejects Plaintiff's contention that Dr. Mastali's "ambiguous" statement was "not enough" to contradict the opinion of Dr. Dommeti (Doc. No. 14 at 13). The ALJ discredited Dr. Dommeti's opinion based on its conclusory nature (unsupported by recent treatment notes) *and* the fact that it was inconsistent with the "objective medical evidence," noting not only Dr. Mastali's opinion, but that of the consultative examiner *and* two other state agency physicians. Ample grounds were provided.

### *CONCLUSION*

The decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards, and is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Orlando, Florida on November 13 , 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record